**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHEN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GAYLE WORMALD** | ) | **CASE NO.** |
| **4439 SAMUEL COURT N.W.** | ) | |
| **MASSILLON, OHIO 44647,** | ) | **JUDGE** |
| | ) | |
| **PLAINTIFF** | ) | **COMPLAINT** |
| | ) | **(Jury Demand Endorsed Hereon)** |
| **V.** | ) | |
| | ) | |
| **OVERHEAD DOOR CORP.** | ) | |
| **c/o CT CORPORATION SYSTEM** | ) | |
| **STATUTORY AGENT** | ) | |
| **4400 EASTON COMMONS WAY,** | ) | |
| **SUITE 125** | ) | |
| **COLUMBUS, OHIO 43219,** | ) | |
| | ) | |
| **DEFENDANT** | ) | |

Now comes Plaintiff Gayle Wormald pursuant to Fed. R. Civ. P. 8 and files her Complaint against Overhead Door Corp. and would show the Court as follows:

## I.       PARTIES

1.   Plaintiff Gayle Wormald is an individual residing in Massillon, Ohio and at all times relevant hereto was an employee as that term is defined by 29 U.S.C. §2611(2).

2.   Defendant Overhead Door Corporation is a Delaware corporation authorized to do business in the state of Ohio. Overhead Door Corporation may be served with process by serving CT Corporation Systems, 4400 Easton Common Ways, Suite 125, Columbus, Ohio 43219. At all times relevant hereto Defendant is an employer as defined by 29 U.S.C. §2611(4).

## I.       JURISDICTION

3.   Jurisdiction of this matter is conferred upon this Court pursuant to 28 U.S.C. §1331 and 29 U.S.C. §2617(a)(2) of the Family Medical Leave Act.

### III.    VENUE

4.    Venue of this matter is properly before this Court pursuant to 28 U.S.C. §1391(b)(1) and (2) as the events that give rise to Plaintiff's claims occurred in Wayne County, Ohio.

### IV.    FACTUAL BACKGROUND

5.    Plaintiff applied for a Human Resources Generalist position but was hired in March 2018 as a human resource manager at Defendant's Mount Hope, Ohio plant in order to receive a higher salary.

6.    In February 2019 Plaintiff applied for a Human Resource Manager position at the Dalton Ohio plant and was awarded the position.

7.    By the first anniversary of Plaintiff's employment, she had worked in excess of 1250 hours for an employer employing over 50 employees within a 75-mile radius of Overhead's Dalton plant.

8.    As of the first anniversary of her employment, Plaintiff became eligible for leave under the Family and Medical Leave Act, 29 U.S.C. §2611 et seq.

9.    Throughout her employment at Overhead, James Dolan was the plant manager, Greg Hayden was the controller, Eric Griffith was a supervisor and Tom Waite was her direct supervisor.

10. In November 2019 Plaintiff's husband suffered from several serious medical conditions which required hospitalization and additional care at home. As a result of his condition, Wormald applied for and was approved for intermittent FMLA leave.

11. Before using FMLA leave Plaintiff had a good working relationship with the plant manager Dolan.

12. Plaintiff endeavored to minimize her use of intermittent leave to two day per week to care for her husband.

13. When using FMLA leave, Plaintiff made every effort to stay current with her work

assignments by working from home or at the hospital when her husband needed hospitalization. This work including returning emails and reviewing materials.

14. After commencing to use her FMLA leave, Dolan began to make disparaging comments about Wormald's use of leave to care for her husband during his hospitalizations and when he needed home care or to attend doctor's appointments.

15. These statements included but were not limited to bragging that he maintained employment at a prior employer below fifty (50) employees to avoid FMLA coverage.

16. Dolan felt free to make such statements in Plaintiff's presence or during meetings in which Plaintiff was in attendance.

17. Among Dolan's comments were that if it was up to him, he would do away with the FMLA. At the time Dolan began his diatribe, he was well aware that Wormald was taking FMLA leave to care for her husband.

18. Dolan was not alone in denigrating Plaintiff for her FMLA use as Greg Hayden the Controller likewise made similar comments.

19. After enduring a number of derogatory comments, Wormald filed a complaint with the Human Resource Department. As a result, Tom Waite, Regional Human Resource Manager, came to the plant to investigate the complaint.

20. In the presence of Waite, Dolan felt free to repeat his disdain for the FMLA stating he "hates the FMLA."

21. Plaintiff also told Waite that Hayden was also making the same type of comments. Waite told Plaintiff he would say something to Dolan and Hayden to resolve the matter.

22. In early January 2020 Veronica Webber, receptionist, sought additional work and asked

Plaintiff if there was anything she could do for her. Wormald appreciated the offer and assigned several items for Webber to complete.

23. Prior to giving Webber any work, Plaintiff discussed what work she was assigning to her with Dolan in order to seek his approval which he gave her.

24. Upon learning that Plaintiff had given Webber work to do, managers including Dolan, Harry Steiner and Justin Belding among others told Webber she should not help Wormald at all.

25. Eric Griffin, a supervisor also told Webber that Wormald was missing too much work.

26. As a result of the managers' statements to her to ignore the work Wormald gave her, she filed a complaint with Human Resources as she believed she was being harassed.

27. Don Duncan from Human Resources was assigned to investigate Webber's complaints.

28. In January 2020 Wormald also filed a complaint on behalf of Webber, concerning harassment from several management officials including Hayden and Dolan.

29. At the conclusion of Duncan's investigation, he met with Plaintif , Anne Wallick, Regional Human Resources Director with Tom Waite on the phone. During this meeting she was informed that she was being transferred to the Mount Hope, Ohio plant to assist in recruiting efforts.

30. Prior to the aforementioned meeting, Duncan told Wormald that if he had to come back to investigate Dolan again, he would have to fire him. Duncan also told Plaintiff that Dolan had made inappropriate remarks to other women who had in turn filed complaints over his conduct.

31. After she was told she was transferred Wormald asked if she could remain at the Dalton plant. She was told that the company had decided it could not have Dolan and her in the same building. As a result, Plaintiff had no choice but to return to Mount Hope.

32. Upon arrival at Mount Hope Plaintiff did not have an office and worked at the receptionist

desk. Her new business cards identified her as "Senior Recruiter."

33. Wormald questioned why her title had changed and Wallick told her this was her new title resulted in a lower pay grade and no bonus. When she asked why she had been demoted, Duncan joined the conversation and informed her that the demotion was due to poor performance.

34. Up to that time Plaintiff had not been notified of any performance issues throughout her employment with Overhead. Her previous performance reviews ranked her as above expectation and received a bonus in April 2020 for the 2019 year.

35. Plaintiff was furloughed as of April 6, 2020 allegedly due to the pandemic.

36. On July 31, 2020 Plaintiff was terminated despite the availability of several human resource positions at the Mount Hope plant she was more than qualified to fill.

37. When she asked why she could not fill a then current opening, Plaintiff was told by Wallick that was not a "good fit" despite performance evaluations that revealed meets or exceeds expectations in all categories.

## V.      FAMILY MEDICAL LEAVE ACT

32. Plaintiff incorporates the allegations contained in paragraphs 1 through 37 inclusive as of fully rewritten herein.

33. The foregoing conduct as set forth above constitutes retaliation against Wormald for the exercise of her rights in violation of 29 U.S.C. §2615(a)(2).

34. As a result of the foregoing conduct, Plaintiff is entitled to recover her lost wages and other benefits lost as a result of the termination of her employment as provided for in 29 U.S.C. §2617(a)(1)(A)(i)(I), interest to be calculated at the prevailing rate and an amount of liquidated damages equal to her lost wages and benefits pursuant to 29U.S.C. §2617(a)(1)(A)(iii).

22. Plaintiff is also entitled to recover her reasonable and necessary attorney fees and the

costs of this action pursuant to 29. U.S.C. §2617(a)(3).

WHEREFORE for the foregoing reasons, Plaintiff requests judgment as follows:

      A.  That Plaintiff be reinstated to her prior position
           as an Human Resource Manager with Defendant;

      B.  That Plaintiff be awarded her lost wages and benefits
           in an amount to be determined as trial;

      C.  That Plaintiff be awarded liquidated damages in an
           amount equal to twice her economic losses;

      D.  That Plaintiff be awarded her reasonable and necessary
           attorney's fees and the costs of this action; and

      E.  That Plaintiff be awarded such other and further
           relief as may be deemed just and equitable.

Respectfully Submitted,

*/s/ F. Benjamin Riek III*
F.Benjamin Riek III (0022703)
Law Offices of F. Benjamin Riek III
755 White Pond Dr., Suite 403
Akron, Ohio 443220
(330) 864-8604
Fax (330) 864-7517
Email: fbenjaminr@msn.com

Counsel for Plaintiff

**JURY DEMAND**

Pursuant to Civ. R. 38, Plaintiff requests a trial by jury on all issues so triable.

*/s/ F. Benjamin Riek III*